IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Jeremy Lee Watson-Buisson, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:24cv603 (RDA/WEF) |
| | ) | |
| Chadwick Dotson, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Jeremy Lee Watson-Buisson ("Petitioner" or "Watson-Buisson"), a Virginia state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging judgments entered against him by the Circuit Court of the City of Norfolk, Virginia on November 8, 2019, and December 5, 2019. Dkt. Nos. 1; 18-1 at 3, 6. Respondent filed a Rule 5 Answer and a Motion to Dismiss, with a supporting brief and exhibits. Dkt. Nos. 16-18. Watson-Buisson was advised of his rights pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. No. 15, and he responded, Dkt. No. 20.[1] Accordingly, the matter is ripe for disposition, and, for the reasons that follow, the Motion to Dismiss shall be granted.

### I. Procedural History

Watson-Buisson is in custody pursuant to the November 8, 2019 and December 5, 2019 judgments of the Circuit Court of the City of Norfolk. During a two-day jury trial that commenced on

---

[1] The Court notes that in compliance with Local Rule 7(K), the respondent provided Watson-Buisson with the notice required pursuant to *Roseboro. See* Dkt. 15. A recent Fourth Circuit decision, *Milla v. Brown*, 109 F.4th 222 (4th Cir. 2024), has cast doubt on whether former Local Rule 7(K), repealed on December 1, 2024, satisfies *Roseboro*, and a revised Rule 7(K) has been proposed accordingly. This Court further notes that Watson-Buisson responded to the respondent's motion to dismiss, after being advised of his right to do so as set forth in the respondent's *Roseboro* notice, *see* Dkt. 20, and therefore the Court does not view the *Milla* decision as an impediment to this Court issuing this order.

July 1, 2019, Watson-Buisson was convicted of three counts of entering school property after having been convicted of a violent sex offense (offense dates—September 28, 2018, October 3, 2018, and October 4, 2018), in violation of Virginia Code § 18.2-370.5. Watson-Buisson was sentenced on October 25, 2019 to five years in prison for entering school property on October 3, 2018, two years in prison for entering school property on October 4, 2018, and one year in prison for entering school property on September 28, 2018.[2] Judgment imposing the five-year and one-year sentences was entered on November 5, 2019, and judgment imposing the two-year sentence was entered on December 5, 2019. Dkt. No. 18-1.

Watson-Buisson, by counsel, filed a petition for appeal in the Court of Appeals of Virginia that raised two assignments of error.

I.    "The trial court erred in denying Defendant's challenges to the sufficiency of the evidence to establish that he had been previously convicted of a sexually violent offense because, as a matter of law, the Defendant's prior Louisiana conviction of 'computer-aided solicitation of a minor' in violation of La. Rev. Stat. § 14:81.3 was not a proper predicate 'sexually violent offense' within the meaning of Virginia Code §§ 9.1-902 and 18.2-370.5; specifically: A. the trial court erroneously ruled that any out-of-state conviction that requires registration in the state of conviction is a 'sexually violent offense,' such interpretation of Virginia Code § 9.1-902(F)(ii) being precluded by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and B. the Defendant's Louisiana conviction was not similar to any offense classified as a 'sexually violent offense' within the meaning of Virginia Code § 9.01-902(F)(i)."

II.   "The trial court erred in denying the Defendant's Motion to Strike as to the indictment alleging entry on school grounds by a violent sex offender on or about September 28, 2018, because there was insufficient evidence to support a finding that the Defendant entered school property or that he entered property

---

[2] On January 2, 2019, the grand jury returned four indictments charging Petitioner with two counts of being in proximity to children in violation of Virginia Code § 18.2-370.2, and two counts entering school property in violation of Virginia Code § 18.2-370.5. (Case No. 18-2762 at 37-40) ("CR at ___"). Prior to trial, on February 26, 2019, the trial court dismissed the indictments alleging Petitioner had violated Virginia Code § 18.2-370.2. *Id.* at 246-48, 656. The third indictment for violating Virginia Code § 18.2-370.5 was returned on March 6, 2019. (Case No. 19CR-501 at 1).

> solely being used by a public or private school for a school-related or school-sponsored activity."

Dkt. No. 18-2 at 7-8. *Watson-Buisson v. Commonwealth*, Record No. 0191-20-1. A judge of the court denied the petition for appeal on May 14, 2020. Dkt. No. 18-3. The May 14, 2020 order summarized the relevant portions of the trial relevant to the first assignment of error.

> In December 2010, appellant was convicted for computer-aided solicitation of a juvenile in Louisiana. *See* La. Stat. Ann. § 14:81.3. Under applicable law in Louisiana, appellant's conviction of computer-aided solicitation required him to register as a sex offender in that jurisdiction. *See* La. Stat. Ann. § 14:81.3(I) (conviction under that statute requires the defendant to register as a sex offender).

> Under Code § 18.2-370.5(A)(iii),

>> [e]very adult who is convicted of a sexually violent offense, as defined in § 9.1-902, shall be prohibited from entering or being present . . . upon any property, public or private, during hours when such property is solely being used by a public or private elementary or secondary school for a school-related or school-sponsored activity.

> "The Sexual Offender and Crimes Against Minors Registry Act . . . requires any person convicted after July 1, 1994 of a sexual offense as described in Code § 9.1-902[3] in the courts of the United States or any of its political subdivisions to register as a sex offender in Virginia." *Shannon v. Commonwealth*, 289 Va. 203, 205 (2015) (citing Code § 9.1-901). Moreover, "[t]hose convicted of violent sex offenses must remain on the [sex offender] registry for life." *Id.* at 205-06 (citing Code § 9.1-908).

>                      *       *       *       *

> Code § 9.1-902(B) lists Virginia crimes that require registration as a sex offender. Code § 9.1-902(E) specifies the Virginia and federal offenses that qualify as "sexually violent" crimes. Furthermore, subsection (F) states:

>> Any offense listed in subsection B, "criminal homicide" as defined in this section, "murder" as defined in this section, and "sexually violent offense" as defined in this section includes (i) any similar offense under the laws of any foreign country or any political subdivision thereof, the United States or any political subdivision thereof or (ii) any offense for which registration in a sex offender and crimes against minors registry is required under the laws of the jurisdiction where the offender was convicted.

> Code § 9.1-902(F).

---

[3] Code § 9.1-902(A)(6) provides that an offense for which registration is required includes "[a]ny offense for which registration in a sex offender and crimes against minors registry is required under the laws of the jurisdiction where the offender was convicted."

3

\*      \*      \*      \*

Appellant argues that he was denied equal protection of the law because he was subjected to more stringent reporting requirements than those applicable to individuals convicted for the same criminal conduct under Virginia law.  However, "[t]he Fourteenth Amendment does not absolutely prohibit a legislative enactment from classifying and treating one person differently from another. . . . [W]hen such a classification 'involves a fundamental constitutional right, a suspect classification (such as race or national origin), or the characteristics of alienage, sex or legitimacy, [it is] subject to close judicial scrutiny.'" *Commonwealth v. Ramey*, 19 Va. App. 300, 302 (1994) (quoting *Salama v. Commonwealth*, 8 Va. App. 320, 322-23 (1989)).  In this case, the classification that appellant challenges does not involve a fundamental right or an inherently suspect classification. The classification involved here thus "does not violate the equal protection requirement so long as it bears a '"reasonable" relation to a "legitimate" governmental objective.'" *Id.* (quoting *Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).  "Such a legislative classification is presumed valid, and our review of it is highly deferential." *Id.*

\*      \*      \*      \*

The Sex Offender and Crimes Against Minors Registry is maintained by the Virginia State Police, Code § 19.2-390.1, to "assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat sex offenders and to protect children from becoming victims of criminal offenders by helping to prevent such individuals from being allowed to work directly with children." Code § 9.1-900. "That purpose evinces clear recognition by the General Assembly of the unfortunate tendency of many sex offenders to recidivate, even long after release from incarceration." *Shannon*, 289 Va. at 206.

Classifying as sexually violent all out-of-state offenders required to register in their state of conviction provides a further level of protection for Virginia residents, especially children, from the danger of recidivism among sexual offenders. In this way, the classification furthers the purpose of Virginia's sex offender registry. Accordingly, a rational basis exists for the classification created by Code § 9.1-902(F)(ii). Appellant failed to carry his burden to negate every rational basis for the classification, and the trial court did not err in rejecting appellant's equal protection claim.

Dkt. No. 18-3 at 1-5 (footnotes omitted).

Watson-Buisson's second assignment of error challenged the sufficiency of the evidence with respect to the conviction for the offense that occurred on September 28, 2018.  The court summarized the evidence in support of its finding that the evidence was sufficient to sustain that conviction.

On the evening of September 28, 2018, Larchmont Elementary School in Norfolk held its annual fundraiser, the Larchmont Rat Race. Sponsored by the school, the event included a one-mile fun run for children and a 5K race, for which the school PTA obtained a special event permit from the city.  There were nearly 900 participants in

4

the race, which was open to the public, and the event drew a large crowd of spectators. The event was publicized for months in advance. Advance notices were distributed to neighbors about street closures surrounding the school during the event. The event started and ended at Brick Field, which was located directly across the street from the school. Before the races began, children congregated on Brick Field.

Andrew Hund, whose son was participating in the race, noticed appellant "very excitedly" riding his bicycle around Brick Field before the race started. After the race, Hund saw appellant, who was then carrying his bike, socializing with children on "the other side of Brick Field." Appellant, with his bicycle on his shoulder, had walked onto the field.

Melody Keddrell, a pizza vendor at Larchmont Rat Race, saw appellant four times riding his bicycle around the event as it occurred. Like Hund, Keddrell saw appellant on Brick Field during the fundraising event.

As noted above, by virtue of his status as a sexually violent offender, appellant was prohibited from "entering or being present . . . upon any property, public or private, during hours when such property is solely being used by a public or private elementary or secondary school for a school-related or school-sponsored activity." Code § 18.2-370.5(A)(iii). The evidence proved that appellant rode his bicycle on and around the grounds where Larchmont Elementary School was holding its fundraising race. The event had been widely publicized as a school-sponsored activity, and resulted in the closure of streets nearby. Brick Field, located across the street from the school, was used for the start and finish of the race. Two witnesses observed appellant on Brick Field during the event, and Hund stated that appellant socialized with children while he was there. Upon this evidence, a reasonable finder of fact could conclude beyond a reasonable doubt that on September 28, 2018, appellant entered upon property solely being used for a school-sponsored activity and that he was guilty of violating Code § 18.2-370.5(A)(iii).

Dkt. No. 18-3 at 5-6. On June 29, 2020, a panel of the court adopted the May 14, 2020 order and denied Watson-Buisson's petition for appeal.

Watson-Buisson, by counsel, filed a petition for appeal in the Virginia Supreme Court, which granted his appeal limited to the first assignment of error that alleged the trial court had erred in denying his claim that his classification as a sexually violent offender violated his right to equal protection.[4] On October 7, 2021, the court rejected Watson-Buisson's argument and affirmed his convictions. *Watson-Buisson v. Commonwealth*, Record No. 200955, 2021 WL 4628456, *3 (Va.

---

[4] In the March 26, 2021 order granting the limited appeal, the Virginia Supreme Court also refused to grant the second assignment of error challenging the sufficiency of the evidence to support the September 28, 2018 conviction. *Watson-Buisson v. Commonwealth*, Record No. 200955 at 129.

Oct. 7, 2021). The Supreme Court of the United States denied Watson-Buisson's petition for a writ of certiorari on February 22, 2022. *Watson-Buisson*, No. 21-6723, 2022 WL 516231 (U.S. Feb. 22, 2022), 142 S. Ct. 1161 (2022); Dkt. No. 18-6 at 28.

On October 13, 2022, Watson-Buisson filed a petition for a writ of habeas corpus in the Circuit Court for the City of Norfolk raising the following claims:

a. The petitioner's right to a complete defense was violated with the trial court refused to subpoena state police witnesses and documents concerning his registration as a Non-Violent Sex Offender for the guilt phase of trial preventing petitioner from raising the defense of criminal intent or *mens rea*, and entrapment by estoppel, creating an error in the trial process;

b. Trial counsel was ineffective for failing to raise and preserve for appeal the complete defense issue, prejudicing petitioner on direct appeal;

c. Appellate counsel was ineffective for failing to raise the complete defense issue on direct appeal, where the issue was raised and preserved by petitioner pro se, prejudicing petitioner on appeal;

d. Trial counsel was ineffective for failing to move to suppress or object to testimonial and video evidence introduced by the Commonwealth which the Commonwealth was collaterally estopped from presenting as improperly relitigating facts underlying a prior acquittal for the charge of obscene sexual display, prejudicing petitioner at trial and on appeal;

e. Trial counsel was ineffective for failing to raise and preserve for appeal the issue of prosecutorial misconduct where the prosecutor committed perjury, prejudicing petitioner at trial and on appeal;

f. Petitioner's right to a fair trial was prejudiced when separate offenses were tried together;

g. Appellate counsel was ineffective for failing to raise the issue of the prejudicial joinder of the offenses, prejudicing petition on direct appeal;

h. Petitioner's right to due process was violated where he experienced judicial bias because the judge favored the prosecution over the defense by 1) prohibiting petitioner from presenting evidence of his registration status during the guilt phase; 2) refused to grant a continuance; 3) denied a request for change of venue; 4) granted the Commonwealth's motion for joinder; and 5) denied a request for a pretrial identification reliability hearing;

i. Trial counsel was ineffective for failing to raise and preserve for appeal the issue of judicial bias;

j. Trial counsel was ineffective for requesting that a hearing for a probation violation in a separate matter be held jointly with the sentencing hearing on the underlying convictions;

k. The cumulative errors of petitioner's ineffective trial counsel prejudiced petitioner on appeal;

l. The cumulative errors of petitioner's ineffective appellate counsel prejudiced petitioner on appeal; and

m. The cumulative effect of the trial errors resulted in petitioner being deprived of a fair trial.

Dkt. No. 18-7 at 4-6.

On February 28, 2023, the circuit court found Watson-Buisson's petition "was not timely filed as required by Code § 8.0l-654(A)(2)" and dismissed his habeas petition. Hab. at 341.[5] Under Virginia Code § 8.01-654(A)(2), the latest Watson-Buisson could file his state habeas petition was October 7, 2022—one year after the conclusion of his direct appeal on October 7, 2021. *Id.* at 341. Watson-Buisson's state petition was postmarked October 13, 2022, and stamped received by the Clerk's Office of the Circuit Court of the City of Norfolk on October 17, 2022. *Id.* at 331. Respondent submitted an affidavit from the mailroom postal assistant at the Greenville Correctional Center, where Watson-Buisson was detained at that time. The postal assistant averred that she had checked the outgoing mail logs from October 4 through October 17, 2022, found that the only piece of mail Watson-Buisson sent out during that time frame was on October 13, 2022, and that it was addressed to the Clerk of the Circuit Court of the City of Norfolk. *Id.* at 333, 334.[6] The circuit court's dismissal order also noted that pursuant to "Rule 3A:25. Special Rule Applicable to Post-Conviction Proceedings: Inmate Filings

---

[5] The circuit court also ruled, in the alternative, that claims a, f, h, and m were defaulted under the rule of *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), Hab. at 342-43, and that his remaining claims had no merit. Hab. at 346-63.

[6] Virginia Code § 8.01-660, provides that "[i]n the discretion of the court or judge before whom the petitioner is brought, the affidavits of witnesses taken by either party, on reasonable notice to the other, may be read as evidence." *See Yeatts v. Murray*, 455 S.E.2d 18, 21 (1995) ("Code § 8.01-660 . . . permits a habeas court to consider the affidavit of any witness as substantive evidence. . . . [and] is consistent with the collateral nature of a habeas corpus proceeding . . ." and, as noted in *Murray v. Carrier*, 477 U.S. 478 (1986), minimizes "'the burdens to all concerned through the use of affidavits or other simplifying procedures.'" (quoting *Murray*, 477 U.S. at 487)).

in the Trial Courts Under Code § 8.01-654," a habeas petition is "timely filed if deposited in the institutions internal mail system with first-class postage on or before the last day for filing." *Id.* at 341.[7] In dismissing the state habeas petition, the circuit court found that "the time for filing the current petition expired on Friday, October 7, 2022, and petitioner failed to deposit his petition in the institutional mail system until October 13, 2022, six days too late." *Id.* 341-42. The final order dismissing the petition was entered on February 28, 2023.

Watson-Buisson filed a notice of appeal and a timely petition for appeal in the Supreme Court of Virginia. *Watson-Buisson v. Clarke*, Record No. 230359 ("Hab. App."). On December 4, 2023, the court refused the petition for appeal stating that "[u]pon review of the record in this case and consideration of the argument submitted in support of the granting of an appeal, the Court is of the opinion there is no reversible error in the judgment complained of." *Id.* at 80.

## II. Federal Petition

On March 28, 2024, Watson-Buisson, proceeding *pro se*, executed his federal habeas petition, pursuant to 28 U.S.C. § 2254, wherein he raises the following claims:

1)  Virginia Code § 9.1-902(F), "as applied to Petitioner violates his Right to Travel, Equal Protection Clause, by classifying him as a sexually violent offender." Dkt. No. 1 at 5.

2)  "In regards to the September 28, 2018 accusation of violating Va. Code § 18.2-370.5, the evidence [did] not establish that the Petitioner entered property being used 'solely' for a school related activity." *Id.* at 7.

---

[7] Virginia Supreme Court Rule 3A:25 provides for three different means of verifying when an item was sent to a court for filing:

In actions brought under Code § 8.01-654, filed by an inmate confined to an institution, a paper is timely filed if deposited in the institution's internal mail system on or before the last day for filing. Timely filing of a paper by an inmate confined to an institution may be established by (1) an official stamp of the institution showing that the paper was deposited in the internal mail system on or before the last day for filing, (2) an official postmark dated on or before the last day for filing, or (3) a notarized statement signed by an official of the institution showing that the paper was deposited in the internal mail system on or before the last day for filing.

3) "Exclusion of Witnesses and VSP correspondence violated [Petitioner's] right to Compulsory Process, and the right to a complete defense." *Id.* at 8.

4) Trial counsel was ineffective for "failing to raise an objection to witness and evidence exclusion, [so] the meritorious claim was not preserved for appeal." *Id.* at 10.

5) Appellate counsel was ineffective for "failing to raise the claim of witness exclusion, complete defense, when objection was raised by Petitioner, *pro se.*" Dkt. No. 1-2 at 1.

6) Trial counsel was ineffective for "failing to object or motion to suppress on video evidence barred under Collateral Estoppel." *Id.* at 2.

7) Trial counsel was ineffective for failing to object to "the issue of prosecutorial misconduct" when the "prosecutor committed perjury." *Id.* at 3.

8) Trial court's joinder of his offenses prejudiced his trial. *Id.* at 4.

9) Appellate counsel was ineffective for not arguing that the trial court's joinder of the petitioner's offenses prejudiced his trial. *Id.* at 5.

10) "Judicial Bias" where trial court precluded witness testimony and excluded evidence, denied a continuance, denied a venue change, granted a joinder of his offenses, and denied his motion for a pretrial reliability hearing on identification. *Id.* at 6.

11) Trial counsel was ineffective for not raising "Judicial Bias." *Id.* at 8.

12) Trial counsel was ineffective for requesting joinder of sentencing for his offenses and a revocation proceeding. *Id.* at 9.

13) Trial counsel was ineffective where the "cumulative effect of ineffectiveness" denied the right to a fair trial. *Id.* at 10.

14) Appellate counsel was ineffective where the "cumulative effect of ineffectiveness" prejudiced him on appeal. *Id.* at 11.

15) The cumulative effect of all trial errors deprived the petitioner of his right to a fair trial. *Id.* at 12.

**III. Statute of Limitations**

Under the Anti-terrorism Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). To be properly filed, the petition must be delivered in compliance with the applicable laws and rules governing filings, including format and

time requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The United States Supreme Court has emphasized that an untimely state petition is not properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005).

Watson-Buisson's petition is untimely under § 2244(d)(1)(A). His convictions became final on February 22, 2022, when the United States Supreme Court denied his petition for a writ of certiorari. Dkt. No. 18-6 at 28. The federal statute of limitations began to run on February 22, 2022, because that is the date the direct review concluded. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *see also Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (where a defendant files "a petition for certiorari to the Supreme Court" direct review concludes "when the Supreme Court either rejects the petition for certiorari or rules on its merits."). Watson-Buisson did not execute his federal petition until March 28, 2024,[8] which is the earliest he could have filed his petition.[9] Consequently, absent statutory or equitable tolling, Watson-Buisson's § 2254 petition is untimely.

*A. Statutory Tolling*

Under AEDPA, a state prisoner must file his petition for a writ of habeas corpus within one year of the completion of the state court direct review process. 28 U.S.C. § 2244(d)(1)(A). In calculating the one-year period, the Court excludes the time during which any properly filed state collateral proceedings were pending. *See* 28 U.S.C. § 2244(d)(2); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

Under Virginia's statute of limitations for filing habeas petitions, Virginia Code § 8.01-654(A)(2), Watson-Buisson had "two years from the date of final judgment in the trial court or within

---

[8] Between February 2, 2022, and March 28, 2024, 785 days elapsed.

[9] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (a pleading is filed at the time a prisoner delivers it to the prison authorities for forwarding to the court clerk).

one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code § 8.01-654(A)(2). Watson-Buisson admitted in his federal petition that his state petition was due on or before October 7, 2022. Dkt. Nos 1 at 14; *see also* Dkt. No. 18 at 12.

The state circuit court found that Watson-Buisson's state habeas petition was "filed on Thursday, October 13, 2022," and denied and dismissed the petition as untimely citing Virginia Code § 8.01-654(A)(2).[10] *See Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006) ("The required deference encompasses both the state court's legal conclusions and its factual findings."). Watson-Buisson filed a timely notice of appeal and petition for appeal. In his petition for appeal, Watson-

---

[10] In the alternative, the circuit court addressed each claim in the state habeas petition, finding several claims defaulted and the remainder without merit. "[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). In *Sochor v. Florida*, 504 U.S. 527 (1992), the U.S. Supreme Court held that it "lacks jurisdiction to review a state court's resolution of an issue of federal law if the state court's decision rests on an adequate and independent state ground, *see Herb v. Pitcairn*, 324 U.S. 117, 125-126 (1945), as it will if the state court's opinion 'indicates clearly and expressly' that the state ground is an alternative holding, *see Michigan v. Long*, 463 U.S. 1032, 1041 (1983); *see also Harris*, 489 U.S. at 264, n. 10; *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935)." 504 U.S. at 533; *see also Bush v. Legursky*, 966 F.2d 897, 900 n. 4 (1992) ("A state ground to deny habeas relief need only be 'independent' and 'adequate;' it need not be exclusive." (citation omitted)); *Ashe v. Styles*, 39 F.3d 80, 86 (4th Cir. 1994) (holding if a state court addresses "the merits of the federal question but also invokes a state procedural bar that is adequate and independent of federal law as an independent ground for decision, a federal court must accord respect to the state law ground for decision, even if it is convinced the treatment of federal law was incorrect"); *see, e.g., Strickland v. Lee*, 471 F. Supp. 2d 557, 575 (W.D.N.C. 2007) (although state post-conviction court addressed the merits "after finding that this issue was procedurally barred, this Court is bound by the procedural ruling"), *aff'd sub nom., Strickland v. Branker*, 284 F. App'x 57 (4th Cir. 2008); *cf. Barnes v. Thompson*, 58 F.3d 971, 974 (4th Cir. 1995) (in habeas review "a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground. The federal court may only inquire into whether cause and prejudice exist to excuse that default, not into whether the state court properly applied its own law" (citations omitted)).

Buisson's first Assignment of Error was that "The Habeas Court Erred in Finding that the Petition Was Not Timely." Hab. App. at 14. He argued as follows:

> After having his memorandum of law in support of his petition notarized, on October 4, 2022, Petitioner submitted his filings with an Inmate Trust System–Withdrawal Request form attached to the envelope to Sargent J. Brown, who then signed and dated the request, and placed the filing directly into the mail system. Through no fault of Petitioner, the filing was not actually mailed until October 13, 2022. The filing went to Unit Manager R. Timmons, who approved the withdrawal request on October 7, 202[2]. The filing was then submitted to the Mailroom, where it was then transferred to the Business Office on October 11, 2022. The transaction was finally approved on October 13, 2022, and mailed out after it was transferred back to the Mailroom.

*Id.* at 14-15.[11]

---

[11] Watson-Buisson submitted a document to this Court filed on July 8, 2024, almost three months after he filed his petition, entitled "Petitioner's Objections to respondent's Motion to Dismiss," ("Objections") Dkt. No. 9-1 at 7-37, dated December 29, 2022. He alleges that his Objections were a rebuttal to the Respondent's Motion to Dismiss in the state circuit court, and that it was accompanied by a copy of the Inmate Trust System–Withdrawal Request form ("Inmate Trust form"). However, the Inmate Trust form did not appear in any of the state court habeas records until the appeal from the dismissal of his state habeas petition. *See infra* at 13-14. And the alleged pleading and the attached documents were not certified to this Court by the state circuit court as a part of the record of the state habeas proceedings in the circuit court. Moreover, Watson-Buisson's petition for appeal does not reference his "Objections" in the Statement of the Case, which does reference the Inmate Trust form (attached as an appendix to the petition for appeal), and then states "The Habeas Court, on February 28, 2023, adopted Respondent's proposed Final Order. The Petitioner filed for notice of appeal, pursuant to Rule 5:9(a), on March 20, 2023." Hab. App. at 13-14. Although the Inmate Trust form was attached to the petition for appeal, the lengthy "Objections" were not attached. To be sure, Watson-Buisson's petition for appeal not only fails to mention his "Objections," Dkt. No. 9-1 at 8, the petition for appeal does not include the numerous Virgina authorities, other authorities, and alleged correctional documents cited in his Objections in the portion of the petition for appeal concerning timeliness, Dkt. No. 9-1 at 8-12, and the petition does not discuss the November 14, 2022 Written Complaint that he attached to his July 8, 2024 filing. Dkt. No. 9-1 at 3.

In short, the "Objections" appeared for the first time on July 8, 2024, as an attachment to Petitioner's federal pleading. Dkt. No. 9. Under AEDPA, federal habeas review is limited to "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). *Pinholster* emphasized "that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court." *Id.* (emphasis added). The Fourth Circuit found that the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'" *Porter v. Zook*, 898 F.3d 408, 443 (4th Cir. 2018) (quoting *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015)). Thus, the Court may not consider the "Objections" in its federal habeas review.

Watson-Buisson's state habeas petition was filed on October 17, 2022, the show cause order was entered on October 25, 2022, the Motion to Dismiss was filed on December 22, 2022, and the final order was entered on February 28, 2023. Hab. at 1, 91, 1123, 166. The proposed final order was filed with the circuit court on November 30, 2022. *Id.* at 93.[12] In his Reply to the Motion to Dismiss, Watson-Buisson alleges "The State Habeas Court, after ignoring Petitioner's objections and evidentiary submissions, adopted the Respondent's proposed final order, which found the petition to be untimely. . . ." Dkt. No. 20 at 4. The record in the state circuit court habeas proceedings establishes that approximately two months passed between the filing of the motion to dismiss and the entry of the final judgment on February 28, 2023, but there is no record of Watson-Buisson filing any pleadings (or anything) in the state circuit court habeas proceeding during that time. Further, in his petition for appeal in the Virginia Supreme Court, there is no mention of the trial court "ignoring [his] objections or evidentiary submissions." Watson-Buisson also attached an unauthenticated document, the Inmate Trust form, to the petition for appeal, which was not in the circuit court record. *Id.* at 46.[13] The Virginia Supreme Court refused his petition for appeal in a summary order on December 4, 2023. Hab. App. at 80.

---

[12] It is apparent that the Motion to Dismiss was sent to the circuit court in November 2022, but it either did not arrive or was misplaced. The Respondent re-filed the Motion to dismiss on December 22, 2022. Hab. at 124.

[13] The Inmate Trust form was not submitted in the circuit court habeas proceedings and thus is not a part of the record considered on appeal. In Virginia, "[w]hen the evidence is not made a part of the record on appeal, all findings of fact by the trial court are presumed to be correct and must be accepted by us as conclusive." *Vaughan v. Johnson*, 210 S.E.2d 139, 140 (Va. 1974); *see, e.g.*, *Wolfe v. Commonwealth*, 576 S.E.2d 471, 488 (Va. 2003) ("The affidavits upon which the defendant relies to make his argument are not a part of the record before this Court and, therefore, we will not consider them or the defendant's related arguments based upon those affidavits.").

In support of his argument that his state habeas petition was timely filed, Watson-Buisson quoted from *Houston v. Lack*, 487 U.S. 266 (1988): "'The *pro se* prisoner [does[14]] not anonymously drop his [habeas petition] in a public mailbox—he hands it over to prison authorities who have well developed procedures for recording the date and time at which they receive papers for mailing [. . .]." *Id.* at 275. However, as Respondent correctly argues, the rule announced in *Houston* is the *federal* mailbox rule. Dkt. No. 18 at 12. Thus, the *Houston* rule is inapplicable to the timeliness of Watson-Buisson's state habeas appeal. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002))).

Indeed, a federal court on habeas review must defer to the state's interpretation of its own law on the timeliness of state habeas filings. In addressing the timeliness of a state habeas appeal, the Western District stated the following:

> State law determines whether the state appeal is timely, and a federal court on habeas review must defer to the state's interpretation of its own law. *Pace*, 544 U.S. at 414; *Carey*, 536 U.S. at 226. The Supreme Court of Virginia specifically held that Formica's notice of appeal was untimely. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In other words, the state found the appeal untimely, and the federal court is not allowed to make a different decision on that state law issue.

*Formica v. Clarke*, No.: 7:19cv39, 2020 WL 3840427, * 2 (W.D. Va. July 6, 2020), *appeal dismissed*, 823 F. App'x 178 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2546 (2021).

Under Virginia state law, Rule 3A:25 expressly states it applies "to actions brought under Code § 8.01-654, filed by an inmate confined to an institution . . . ." Va. Sup. Ct. R. 3A:25. In *Formica*, the Western District addressed Rule 3A:25, stating the following:

---

[14] Petitioner omitted "does" from his petition for appeal, and it is included here as a likely scrivener's error.

> Rule 3A:25 of the Rules of the Supreme Court of Virginia specifies three ways in which an inmate may establish when his pleading is deposited into the institutional mail: An official stamp of the institution, an official postmark, or a notarized statement signed by an official of the institution. The only evidence in compliance with that rule was the statement of the prison official that the notice was delivered to the prison mail on November 8, 2017. The state court's factual and legal determinations on this issue were clearly reasonable.

*Id.* at * 2 n.2. In a case nearly identical procedurally to Watson-Buisson's, a circuit court had found that the state habeas petition was untimely, and the Virgina Supreme Court refused the subsequent petition for appeal. *Burrell v. Zook*, No. 3:16cv122-HEH, 2016 WL 7018540, *1 (E.D. Va. Nov. 30, 2016), *appeal dismissed*, 677 F. App'x 134 (4th Cir. 2017). Burrell, the petitioner in that case, alleged that he had filed his state petition "on September 25, 2014, the day that he signed the state petition and had it notarized," but Burrell had "not produced any" evidence in compliance with Rule 3A:25 to establish that his state petition was timely filed. *Id.* at * 1 n.1. The district court found the state habeas petition was not properly filed, found Burrell was not entitled to statutory tolling, and dismissed his federal petition as untimely. *Id.* at * 3. Similarly, under Rule 3A:25, here Watson-Buisson's state habeas petition was not properly filed.

Moreover, Watson-Buisson's assertion of diligence is disproved by the record. As noted above, Watson-Buisson had the opportunity after the motion to dismiss was filed to submit evidence in accordance with Rule 3A:25 that he had complied with the timely filing requirements of that rule.[15]

> In actions brought under Code § 8.01-654 [the Virginia habeas provision], filed by an inmate confined to an institution, a paper is timely filed if deposited in the institution's internal mail system, with first-class postage prepaid on or before the last day for filing. Timely filing of a paper by an inmate confined to an institution may be established by (1) an official stamp of the institution showing that the paper was deposited in the internal mail system on or before the last day of filing, (2) an official postmark dated on or before the last day for filing, or (3) a notarized statement signed by an official of the

---

[15] The state motion to dismiss was mailed to Watson-Buisson on November 9, 2022, and the proposed final order was mailed to him on November 30, 2022. Hab. at 92, 123. The final order was entered on February 28, 2023, approximately three months after the proposed final order was sent to Watson-Buisson. *Id.* at 195.

institution showing that the paper was deposited in the internal mail system on or before the last day for filing.

*Eaton v. Clarke,* No. 3:11cv834, 2012 WL 4344195, *1, n.6 (E.D. Va. Sept. 21, 2012), *appeal dismissed*, 508 F. App'x 198 (4th Cir. 2013). Watson-Buisson's discussion of this point in his Reply omits the obvious—there is nothing in the circuit court record that disputed the state habeas court's finding that his petition was untimely. *See Pace*, 544 U.S. at 417 ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)").

Indeed, Watson-Buisson's Reply now asserts a "new" argument—that his due date was not October 7, 2022, but October 22, 2022, because he could have filed a petition for rehearing pursuant to Virgina Rule 5:20. Dkt. No. 20 at 2-3. First, he did not file a petition for rehearing.[16] Second, he did not raise this issue in his state habeas appeal (and could have via a petition for rehearing), which is also clearly an issue of state law. Third, the Virginia Supreme Court is aware of its own rules and did not find error in the dismissal of Watson-Buisson's petition for appeal. Fourth, Watson-Buisson averred under oath in his federal petition that his due date was October 7, 2022. Dkt. No. 1 at 14.

Accordingly, as Watson-Buisson did not file a state petition before the expiration of the federal statute of limitations, his state petition was not properly filed, and there is no basis for statutory tolling in this case.[17]

---

[16] As this Court has held, "[i]t is well-settled that raising a claim in a petition for rehearing does not fairly present the claim to the state's highest court." *Jason v. Warden*, No. 1:12cv577, 2013 WL 627076, at *3 (E.D. Va. Feb. 20, 2013) (citing *Hendrick v. True*, 443 F.3d 342, 364–65 n. 1 (4th Cir.2006) (citing *Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir.2004) and *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir.1990)), *appeal dismissed*, 538 F. App'x 282 (4th Cir. 2013). Although Watson-Buisson did assign error to the dismissal as untimely, he never raised this argument in state court, and he did not challenge the circuit court's finding that his petition was due by October 7, 2022. Hab. at 341.

[17] It is well established that "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

B. *Equitable Tolling*

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way that prevented timely filing. *Pace*, 544 U.S. at 418. A petitioner asserting equitable tolling "'bears a strong burden to show specific facts'" that demonstrate fulfillment of both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). "Equitable tolling is an exceedingly narrow window of relief." *Finch v. Miller*, 491 F.3d 424, 427–28 (8th Cir. 2007) (citation omitted). The extraordinary circumstance component requires a petitioner to establish that the circumstance that prevented him from complying with a deadline was "an 'external obstacle' to timely filing, *i.e.*, that 'the circumstances that caused [his] delay must have been beyond [his] control.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016). Lastly, Watson-Buisson is obliged to specify the steps he took in diligently pursuing his federal claim, *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001), and he must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). Moreover, the party seeking equitable tolling must "show diligent pursuit of his claim '*throughout the period he seeks to toll*.'" *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011) (quoting *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007)). Indeed, equitable tolling is available only in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008).

Watson-Buisson notes that the federal statute of limitations can be tolled, that such decisions are made on a case-by-case basis, and that it is his burden to show that he is entitled to equitable tolling. Dkt. No. 20 at 4. Thereafter, however, he states the Respondent is incorrect in arguing that the federal mailbox rule does not apply to the filing of state habeas petition, stating the Virginia Supreme Court has adopted *Houston v. Lack*, that the Inmate Trust form establishes diligence, and that he is actually innocent.[18]  Dkt. No. 20 at 4-6. The Court has addressed the state mailbox rule and

---

[18] Watson-Buisson also misconstrues several cases in support of his argument that state court error "may afford [a] basis for federal habeas relief." Dkt. 20 at 5. His reliance on *Sanna v. Dipaolo*, 265 F.3d 1 (1st Cir. 2001), and its citation to *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), is misplaced. *Sanna* did not find error, and also, importantly, noted that not "every error of state law can be transmogrified by artful argumentation into a constitutional violation" and that the Supreme Court had invoked "the *Chambers* tenet only rarely." 265 F.3d at 12. *Chambers* is likewise not applicable to an alleged error in a state habeas proceeding because *Chambers* concerned an allegation of error regarding the exclusion of evidence in a state criminal trial. 410 U.S. at 294 ("the right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."). As the Fourth Circuit in *Lawrence v. Branker*, 517 F.3d 700 (4th Cir. 2008), explained:

> [a] state prisoner has no federal constitutional right to post-conviction proceedings in state court. *Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001) (noting that "each State has created mechanisms for both direct appeal and state post-conviction review, even though there is no constitutional mandate that they do so" (internal citations omitted)); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Thus, even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief.").

517 F.3d at 717. *Lawrence* concluded that because the petitioner's "due-process claims relate only to the" state court's "adjudication of his state post-conviction motion, we are without power to consider them," and *Lawrence* affirmed "the district court's denial of a habeas writ to [the petitioner] on his due-process claims relating to the" post-conviction proceedings. *Id.*

Watson-Buisson's reliance on *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005), and *Dorn v. Lafler*, 601 F.3d 439, 443 (6th Cir. 2010), is also misplaced. *Simkins* is a § 1983 proceeding in which the court found that a correctional officer was not entitled to qualified immunity because her conduct was intentional in that she withheld that plaintiff's mail for a year, which resulted in him not receiving a motion for summary judgment in a timely fashion and impeded his "efforts to pursue a claim." *Id.* at 1243, 1244. The Inmate Trust form, the only form in the state court record, simply states "Legal

*Houston v. Lack* above. *Supra* at 14-16. Watson-Buisson's reliance on *Albritton v. Commonwealth*, 853 S.E.2d 512 (Va. 2021), is misplaced. In *Albritton*, the Virginia Supreme Court addressed the filing of an administrative appeal by an inmate and an interpretation of the VDOC's regulations, not Rule 3A:25. 853 S.E.2d at 518. The court cited *Houston v. Lack* as an example in which a court addressed the fact that a prisoner had no control over a matter after it was delivered to prison authorities. At best, *Albritton* established a general rule for administrative matters. Rule 3A:25, however, was specifically promulgated to handle actions "brought under Code § 8.01-654," which provides three different means for a prisoner to establish compliance with Rule 3A:25.[19]

Lastly, Watson-Buisson's lack of diligence is established by his admission that his state habeas petition, was signed, notarized, and dated on August 22, 2022. Hab. at 7. The delay thereafter he attributes to his preparation of a "memorandum of law," which was not necessary to meet Virginia's filing requirements for a state habeas petition. *See* Va. Code Ann. § 8.01-655.[20]

---

Mail, State habeas Corpus; Circuit Court, City of Norfolk," and nothing about an impending due date in three days. Hab. App. at 48. In *Dorn v. Lafler,* the issue involved "the prison officials' mishandling of his appeal papers" that caused the petitioner "to lose his appeal of right" *to challenge his conviction by direct appeal*, not a judgment in a post-conviction proceeding. 601 F.3d at 443.

[19] The tenets of statutory construction, which apply to rules of court, *Martin v. Lahti*, 809 S.E.2d 644, 648 (Va. 2018) ("Like statutes, we construe rules of evidence based on their plain language." (citation omitted)); *Browning v. Browning*, 802 S.E.2d 178, 180 (Va. Ct. App. 2017) ("Rules of statutory construction apply equally to the interpretation of the Rules, . . . ."), include one that is applicable here—"the specific controls the general . . . ." *See Crawford v. Haddock*, 621 S.E.2d 127, 130 (Va. 2005); *accord Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (noting that a "specific provision controls over one of more general application"). Rule 3A:25 is specific to only one state civil action, state habeas petitions filed pursuant to Code § 8.01-654.

[20] Section 8.01-655, which contains what is required for a state habeas petition, actually admonishes petitioners that "[w]hen the petition is completed, the original and two copies (total of three) should be mailed to the clerk of the court. The petitioner shall keep one copy." The Fourth Circuit described the form state petitioners are directed to use as a "five-page form . . . divided into sections, each of which contains simple prompts directing the prisoner to provide the basic information necessary to review his conviction. The first section of the form solicits information from the prisoner regarding the course of his original criminal trial." *Mallory v. Smith*, 27 F.3d 991, 992 (4th Cir. 1994) (discussing Virginia Code § 8.01-655). Watson-Buisson used the format of the form in Code § 8.01-655, but he expanded his answers which made it a total of seven pages long—which included his *in*

The record establishes that Watson-Buisson could have sent his petition in on August 22, 2022, because it was complete, but he decided not to because he wanted to add his memorandum. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (a *pro se* petitioner's "ignorance of the law is not a basis for equitable tolling").[21] This Court addressed a similar issue with respect to an inmate claiming he needed copies of his trial transcripts to file his state habeas petition. The Court rejected his excuse because

> "'there is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief. Rather, Rule 2(c) of the Rules Governing § 2254 Cases provides that a petitioner need only 'set forth in summary form the facts supporting each of the grounds' specified in the petition.'"

*Dupuy v. Clarke*, No. 1:22cv620, 2023 WL 5959429, *5 (E.D. Va. Sept. 13, 2023) (quoting *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002)), *appeal dismissed*, 2024 WL 1427601 (4th Cir. Jan. 10, 2024). Similarly, the Fourth Circuit affirmed a district court's order denying a petitioner's motion to compel discovery related to his criminal case because he had "failed to demonstrate a particularized need for the documents, and he could rely on his own recollection in preparing a collateral attack on his conviction and sentence." *United States v. Butler*, 178 F. App'x 327, 327 (4th Cir. 2006) (citing *United States v. Shoaf*, 341 F.2d 832, 835 (4th Cir. 1964) (recognizing that, if matters on which

---

*forma pauperis* application. Dkt. No. 18-7 at 1-7. State law did not require the 45-page memorandum of law that he attached to his state petition. In other words, Watson-Buisson could have filed his petition in a timely manner and filed his memorandum of law at a later date.

[21] *Sosa* cited several cases from other federal circuits. *Id.* at 512 (citing *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." (quotation marks omitted)); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling . . . ."); *Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a *pro se* prisoner's ignorance of the law warranted equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (same)). In this same vein, "[i]n the context of habeas claims, courts have been loath to excuse late filings simply because a *pro se* prisoner misreads the law." *Delaney*, 264 F.3d at 15. *See also Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir 2004) ("[I]gnorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default.").

collateral attack is based are within knowledge of petitioner, there will be no need for transcript)); *see also McCleskey v. Zant*, 499 U.S. 467, 500 (1991) (unavailability of a document, the contents of which petitioner had at least constructive knowledge, did not constitute cause that allegedly prevented him from raising claim in his habeas petition).

Thus, the Court finds that Petitioner was not diligent, the alleged extraordinary circumstance did not keep him from filing his state habeas petition in a timely manner, and he is not entitled to equitable tolling.

C. *Actual Innocence.*

Watson-Buisson alleges his claim of actual innocence is a "gateway" claim that allows this Court to excuse the untimely filing of his federal habeas petition. Dkt. No. 20 at 6. A "convincing " or "credible" claim of actual innocence may excuse a petitioner's untimely filing of his federal habeas petition, *McQuiggin v. Perkins*, 569 U.S. 383, 392-93 (2013); however "claims of actual innocence are rarely successful," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and "should not be granted casually," *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under *Schlup* is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). To prevail on an actual innocence claim, a petitioner must present new evidence showing "that it is more likely than not that *no reasonable juror* would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327 (emphasis added).

Watson-Buisson's assertion of actual innocence is conclusory. In his Objections to the motion to dismiss, Watson-Buisson quotes from a law journal, Dkt. No. 20 at 6,[22] but never constructs any cogent argument or marshals facts in a cohesive manner. *See Nickerson v. Lee,* 971 F.2d 1125, 1136 (4th Cir. 1992) (bald assertions and conclusory allegations are insufficient to support habeas relief), *overruled on other grounds as recognized in Yeatts v. Angelone,* 166 F.3d 255, 261 n.4 (4th Cir. 1999); *see also United States v. Dyess,* 730 F.3d 354, 359-60 (4th Cir. 2013) (holding that the district court may disregard "vague and conclusory allegations" in habeas petitions and review only claims "supported by facts and argument"); *James v. Borg,* 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *cf. Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do' . . . . the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Fourteen pages after his conclusory statement of his gateway actual innocence claim, Watson-Buisson mentions "miscarriage of justice" in discussing his federal habeas Claim 3, which does not refer to new evidence but to evidence that was known at trial and excluded by the trial court as irrelevant. Dkt. No. 20 at 19-20. Watson-Buisson precedes his mention of miscarriage of justice by quoting from a Fourth Circuit case, and inserts himself (using "Petitioner") into the quote as the

---

[22] Watson-Buisson argues that he "raised credible claims of actual innocence," Dkt. No. 20 at 6, and then quotes from the law journal: "'Claims of actual innocence have not been recognized by the United States Supreme Court as independent grounds for habeas relief; however, they may serve as a 'gateway' to out-of-time, second, or successive habeas petitions under 28 U.S.C. § 2244 if the petition also raises a separate cognizable claim of constitutional error.' 50 Geo. L.J. Ann. Rev. Crim. Proc. 1081 (2021)."

subject—"'Although [Petitioner's] misdoing objectively comprises the physical elements of a crime, nevertheless no crime has been perpetrated because the conduct was neither actuated by an evil intent nor accompanied with a consciousness of wrongdoing, indispensable ingredients of a crime. *Driver v. Hinnant*, 356 F.2d 761, 764 (4th Cir. 1966)." Dkt. No. 20 at 19. The quote as altered essentially admits that the evidence at trial establishes the elements of the offenses, excluding his mental state, and does not establish "that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup*, 513 U.S. at 327.

Claim 3 discusses a June 28, 2019 hearing in which the trial court refused to grant Watson-Buisson's motion for a continuance in order to obtain service on witness subpoenas for Virginia State Police ("VSP") "agents, or present VSP correspondence, regarding their administrative interpretation of Va. Code § 9.1-902 classifying him as a Sexual Offender, not as a Sexually Violent Offender, violat[ing his] right to Compulsory Process leaving [him] without a Complete Defense to present to the jury." Dkt. No. 1 at 8. His claim ignores the record, and Watson-Buisson attempts to conflate the use of the phrase "sexually violent offender" in different portions of the Virginia Code.

At the June 28, 2019 hearing, Watson-Buisson, proceeding *pro se* at this point,[23] argued several matters, including his request for a continuance because he had not been able to serve VSP Lt. Eric Gowin; Amanda Rader, VSP custodian for the VSP sex offender registry; and Watson-Buisson's compliance officer, VSP Trooper James Brown. Case No. 18-2762 at 419. Watson-Buisson represented that "[t]hey will testify that they are the person to which I register to, the agency that I register to and the fact that I would be registering as a non[-]violent offender, non[-]violent sexual offender, whereas the charge is, you know, violent sexual offender on school grounds." *Id.* The

---

[23] At the time of the June 28, 2019 hearing, Watson-Buisson was proceeding *pro se*, but at the time of trial he withdrew his *pro se* status and proceeded by counsel, Christopher Bettis.

prosecutor responded stating that "the Commonwealth would stipulate that he is categorized by the Virginia State Police as simply a sex offender, not a violent sex offender . . . . so we would stipulate that he registered for the computer-aided solicitation charge[24] and that . . . is categorized as a sexual offense, not a sexually violent offense for Virginia State Police purposes." *Id.* at 419-20. Watson-Buisson responded that it was relevant to the defense because the VSP "are saying that I'm non[-]violent, I think that's something that the jury needs to consider regardless of what the case law may have said in Turner versus Commonwealth in either both the Court of Appeals case or the Supreme Court case in that matter. It should be up to the jury to decide these facts." *Id.* at 421. The court rejected Watson-Buisson's argument stating that it was "a question of law. It's not a question of fact, and I believe the law has already been ruled on in this case." *Id.* at 422.

The discourse continued with the court noting that the VSP Trooper might be relevant to sentencing if he was convicted but the court had earlier ruled at a hearing "that because of your conviction in Louisiana you are deemed by statute a violent sex offender. The question is were you on this school property on the dates in question. That's a question of fact for the jury to determine," to which Watson-Buisson stated, "I understand, Your Honor." *Id.* at 423. After protracted argument on the same point, the prosecutor agreed she "would be willing to stipulate there have been no issues with [Watson-Buisson's] actual registration" adding that "[i]If there had been, he would have been charged or our office would have been contacted regarding other charges." *Id.* at 403.[25]

At trial, Watson-Buisson proceeded by counsel. Trial counsel did not seek to enter the stipulations discussed at the June 28, 2019 hearing as evidence for the jury to consider. Trial counsel,

---

[24] The conviction referred to is Watson-Busson's conviction in Louisiana.

[25] At trial, Watson-Buisson's counsel asserted in his motion to strike that "the element of violent sex offender for the purposes of the statute, both on the question of whether Mr. Watson-Buisson's out-of-state charges qualify for that, whether they're violent offenses, and whether there's equal protection consideration with him being prosecuted that way for those bases." *Id.* at 830.

however, elicited testimony from Detective Chafee that Watson-Buisson was "a registered sex offender with the Virginia State Police," CR at 757, and that the reason he was registered in Virgina was his "computer-aided solicitation of a minor the offense," referring to Commonwealth's Ex. No. 7, a copy of Watson-Buisson's conviction for violating La. Stat. Ann. § 14:81.3(I) (computer aided solicitation of a minor).

In any event, on appeal, the Court of Appeals, addressing the trial judge's ruling that as a matter of law Watson-Buisson was deemed a sexually violent predator because he was registered under Code § 9.1-902(F)(ii), held that Watson-Buisson was required to register as a sex offender in Virginia because of his Louisianna conviction, and that registration classified him as a sexually violent offender. Dkt. No. 18-3 at 3.

At the time of Watson-Buisson's trial, Virginia's "Sexual Offender and Crimes Against Minors Registry Act, Code § 9.1-900 *et seq.*, require[d] any person convicted after July 1, 1994 of a sexual offense as described in Code § 9.1-902 in the courts of the United States or any of its political subdivisions to register as a sex offender in Virginia. Code § 9.1-901." *Shannon v. Commonwealth*, 768 S.E.2d 433, 435 (Va. 2015). Watson-Buisson did not dispute that he was required to register as a sex offender when he moved to Virginia. Case No. 18-2762 at 99. Virginia Code § 9.1-902(F)(ii), as in effect at the time of Watson-Buisson's trial, defined a sexually violent offense as "any offense for which registration in a sex offender and crimes against minors registry is required under the laws of the jurisdiction where the offender was convicted," *id.* at 101, which included Watson-Buisson. Watson-Buisson was convicted of violating Virginia Code § 18.2-370.5 which read at the time of the offense and trial

> Every adult who is convicted of a *sexually violent offense, as defined in § 9.1-902*, shall be prohibited from entering or being present (i) during school hours, and during school-related or school-sponsored activities upon any property he knows or has reason to know is a public or private elementary or secondary school or child day center property;

(ii) on any school bus as defined in § 46.2-100; or (iii) upon any property, public or private, during hours when such property is solely being used by a public or private elementary or secondary school for a school-related or school-sponsored activity.[26]

(emphasis added).[27]

The trial court's ruling was not pursued on appeal, and, even if it had been, the argument would have been rejected. In *Turner*, the Virginia Supreme Court held that Virginia Code § 9.1-902 "treat[ed] some persons convicted in another state differently than some persons convicted in Virginia, by imposing on some out-of-state convicts a more onerous registration regime," but that this was "not an internal inconsistency in the statute." 826 S.E.2d at 310. Interpreting Code § 9.1-902(F)(ii), *Turner* concluded that the "clear and unambiguous" language of the statute required the appellant, because he had been required to register as a sex offender in another state, "he was required to register as a sexually violent offender in Virginia." 826 S.E.2d at 309, 310 (citing Va. Code § 9.1-902(F)(ii)).

The trial court excluded evidence at the June 28, 2019 hearing because the statute, as a matter of law, classified Watson-Buisson as a sexually violent offender for purposes of the statute under which he was convicted.[28] The fact that the VSP personnel with whom he had dealt and corresponded with about his registration as a sex offender was irrelevant. In any event, the unobjected to jury instructions establish that the issue was one of law. Jury Instruction No. 7 read that "A sexually violent offense includes any offense for which registration in a sex offender and crimes against minors registry

---

[26] The General Assembly amended this statute in 2020 by striking "sexually violent" and inserting "Tier III." 2020 Va. Acts 82. The "Tier III" reference refers to the amendment made to Virginia Code § 9.1-902 in the same Act.

[27] After having reviewed this record, the Court concurs with the trial judge's assessment of the argument as "a tedious and mind-numbing comparison of several Virginia and Louisiana statutes" which required "cross-referencing of Virginia statutes." (Case No. 18-2762 at 98).

[28] At trial, the evidence included testimony that Watson-Buisson was "on the sex offender registry," that he was "a registered sex offender with the Virginia State Police," and that his 2010 Louisiana conviction for "computer-aided solicitation of a minor" was the reason he had to register. Case No. 18-2762 at 757.

is required under the laws of the jurisdiction where the offender was convicted." CR at 373. This is not a disputed fact. Consequently, it satisfied the relevant element of the substantive offense.[29]

Finally, Claim 3 involves a matter of statutory interpretation—an issue of state law. On federal habeas review, a federal court cannot revisit the Virginia Supreme Court's construction of state statutes. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *accord Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute." (citations omitted)).

In sum, Watson-Buisson was not deprived of a defense because the alleged defense did not exist and the witnesses were, therefore, irrelevant.

---

[29] Instruction No. 8 reads as follows:

The defendant is charged with the crime of Enter school property, etc. after a violent sex conviction. The Commonwealth must prove beyond a reasonable doubt the following:

    (1) that the defendant has been convicted of a sexually violent offense

    (2) that the defendant entered or was present during school hours and

    (3) during school-related or school-sponsored activities,

    (4) upon property the defendant knew or had reason to know is a public or private elementary or secondary school property

OR

    (1) that the defendant has been convicted of a sexually violent offense

    (2) entered or was present

    (3) on any property public or private during hours when such property is solely being used by a public or private elementary or secondary school for school-related or school- sponsored activity.

CR at 374.

To the extent Watson-Buisson's actual innocence argument is based on his federal Claim 3, he has failed to establish a gateway actual innocence claim under *Schlup*; and, if he did not intend to rely on Claim 3 by his reference to a miscarriage of justice, his actual claim is conclusory and likewise fails to establish a gateway claim under *Schlup*.

Thus, this federal petition is untimely, and will be dismissed.

### IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss, Dkt. No. 17, must be granted, and the Petition will be dismissed as untimely by an order to be issued alongside this Memorandum Opinion.[30]

Entered this ____16____ day of ___July___, 2025

Alexandria, Virginia

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge

---

[30] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.